UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 10-01958-JAF
CHAPTER 13 CASE

IN RE:

MIKHAIL LEVISKY
NATALIYA LEVITSKY

Debtors.

_____/

## MOTION FOR RELIEF FROM STAY
## (PROPERTY IS BEING SURRENDERED)

Movant, **JP MORGAN CHASE BANK, N.A.** by and through its undersigned attorney shows
the Court:

1. Movant is a secured creditor of the above styled Debtor(s) and brings this Motion
   pursuant to the provisions of Section 362(d) of the Bankruptcy Code.

2. The Debtor(s) owns certain real property in BROOKLYN Borough, New York described
   as:

   ### SEE ATTACHED UCC1

   ### A/K/A: 611 BANNER AVE 6H, BROOKLYN, NY
   ### 11235

3. Debtor(s) owns the above real property subject to a promissory note and mortgage
   securing same dated March 8, 2006, which note and mortgage are held by Movant.
   Copies of the loan documents to Movant are attached hereto.

4. Debtor(s) have evidenced their intention to surrender subject property in their Chapter 13
   Plan, therefore, this case is not necessary to an effective reorganization.

5. Movant is receiving no payments from the debtor(s) to protect Movant against erosion of
   its collateral position and Movant is not otherwise being adequately protected.

6. Movant seeks the award of $800.00 in bankruptcy fees and costs for the prosecution of
   this Motion.

10-18125

7. The fourteen (14) days stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that JP MORGAN CHASE BANK, N.A. can pursue its in rem remedies without further delay.

WHEREFORE, Movant, JP MORGAN CHASE BANK, N.A. moves this Court to enter its order granting relief from stay to Movant and that the fourteen (14) days stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is waived so that JP MORGAN CHASE BANK, N.A. can pursue its in rem remedies without further delay to the Movant and award bankruptcy fees and cost of $800.00 and granting such other relief as to the Court may seem just and proper.

I HEREBY CERTIFY that a true and correct copy of the Motion for Relief from Stay (property is being surrendered)and attachments and Affidavit In Support of Motion For Relief From Stay was delivered to the addressees on the attached mailing list by First Class U. S. Mail postage pre-paid **and/or electronic mail** this ____ day of _____, 2010.

> Law Offices of Marshall C. Watson, P.A.
> 1800 N.W. 49TH Street, Suite 120
> Fort Lauderdale, FL 33309
> Telephone: (954) 453-0365/1-800-441-2438
> Facsimile: (954) 689-3517
> antonio.alonso@marshallwatson.com
>
> By: _____
> Antonio Alonso, Esq.
> Bar Number: 50335

10-18125

**Mailing List:**

**MIKHAIL LEVITSKY**
208 FRONTIER DRIVE
PALM COAST, FL 32137-8407

**NATALIYA LEVITSKY**
208 FRONTIER DRIVE
PALM COAST, FL 32137-8407

**TIMOTHY M. GOAN, ESQUIRE**
1 HARGROVE GRADE, SUITE 2
PALM COAST, FL 32137

*TRUSTEE*
**DOUGLAS W. NEWAY**
P O BOX 4308
JACKSONVILLE, FL 32201

10-18125

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006013000117001001E327A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

| | | |
|---|---|---|
| **Document ID:** 2006013000117001 | Document Date: 01-30-2006 | Preparation Date: 01-30-2006 |
| Document Type: INITIAL COOP UCC1 | | COOPERATIVE |
| Document Page Count: 2 | | |

**PRESENTER:**
MUTUAL ABSTRACT CORP.
132 NASSAU STREET, 812
NEW YORK, NY 10038
212-964-4686
INFO@MUTUALABSTRACT.COM

**RETURN TO:**
MUTUAL ABSTRACT CORP.
132 NASSAU STREET, 812
NEW YORK, NY 10038
212-964-4686
INFO@MUTUALABSTRACT.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7242 | 1002 Entire Lot | 6H | 611 BANNER AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ____ Page_____ *or* File Number_____

### PARTIES

**DEBTOR:**
MIKHAIL LEVITSKY
611 BANNER AVENUE, APT. 6H
BROOKLYN, NY 11235

x Additional Parties Listed on Continuation Page

**SECURED PARTY:**
JPMORGAN CHASE BANK NA, C/O CHASE HOME
FINANCE LLC
780 KANSAS LANE, SUITE B
MONROE, LA 71203

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 40.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed          01-31-2006 12:07
City Register File No.(CRFN):
          2006000057699

*Annette M. Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2006013000117001001C30FA

| Document ID: 2006013000117001 | Document Date: 01-30-2006 | Preparation Date: 01-30-2006 |
|---|---|---|
| Document Type: INITIAL COOP UCC1 | | |

**PARTIES**
**DEBTOR:**
NATALIYA LEVITSKY
611 BANNER AVENUE, APT. 6H
BROOKLYN, NY 11235

DUPLICATE ORIGINAL SENT FOR RECORDING

VOID

## NEW YORK COOPERATIVE LOAN SECURITY AGREEMENT
## LOAN SECURITY AGREEMENT

THIS AGREEMENT IS A LOAN SECURITY AGREEMENT, dated the **8TH** day of **MARCH, 2006** in favor of **JPMORGAN CHASE BANK, N.A.,** incorporated under the laws of the **STATE OF NEW YORK** and having an office at One Chase Manhattan Plaza, New York, New York 10081, (the "Lender"), by **MIKHAIL LEVITSKY and NATALIYA LEVITSKY,** residing at **611 Banner Avenue, Apt 6H, Brooklyn, New York, 11235** (the "Borrower").

In this Loan Security Agreement, the words "I", "me", "my", "mine" and "Borrower" mean each and every person who signs this Loan Security Agreement. The words "you" and "your" mean the Lender named above, or any other person or organization to whom Lender assigns this Loan Security Agreement.

1. **OWNERSHIP**
   I own **875** shares (the "shares") of capital stock of **611 BANNER OWNERS CORP.** (the "Corporation") and I am the tenant under a proprietary lease (the "Lease") for Apartments **#6H** (the "Apartment") in the building located at **611 BANNER AVENUE, BROOKLYN, NY 11235** (the "Building"). I represent to you that the Shares are all the shares of capital stock in the Corporation that are allocated to the Apartment. I represent that I have not been known by any other name during the last ten years except as I have already disclosed to you in the credit application or a separate writing.

2. **TRANSFER OF INTEREST AS SECURITY**
   By signing this Loan Security Agreement I give, assign and pledge to you a security interest (the "Security Interest") in the property described in paragraph 4 below. There is no other existing security interest in that property. Similarly, neither the Lease, certificate of incorporation, the bylaws of the Corporation nor any other documentation required by you to complete this transaction prohibit me from giving the Security Interest to you.

3. **DEBT WHICH IS SECURED BY THIS LOAN SECURITY AGREEMENT**
   This Loan Security Agreement will secure the repayment of all amounts I owe you under the note (the "Note"), dated the date of this Loan Security Agreement, in the principal amount of **$136,000.00** plus interest and other amounts as provided in the Note and any and all other amounts I owe you under this Loan Security Agreement. The terms and provisions of the Note form a part of this Loan Security Agreement as if they were repeated herein, and are incorporated in the terms and provisions of this Loan Security Agreement by reference.

4. **SECURITY**
   All of the property in which a security interest is given by this Loan Security Agreement is called the "Security", and includes:
   A. All my right, title and interest in and to the Shares and the Lease. This includes any replacement, substitute or additional shares allocated to the Apartment. It also includes any amendments and extensions to, or replacements of or substitutes for, the Lease; and
   B. All proceeds, including:
      i. any proceeds from any sale, assignment or other transfer of the Shares, the Lease of the Apartment;
      ii. any proceeds attributable to the Shares, the Lease or the Apartment received because of the dissolution, liquidation or other termination of the existence of the Corporation;
      iii. any proceeds received because of a capital or other distribution made by the Corporation with respect to the Shares, the Lease or the Apartment;
      iv. any proceeds of awards or claims for damages resulting from condemnation or other governmental taking of the Building or of the Lease or Apartment; and
      v. any proceeds paid to me under any insurance policy covering the Apartment, the Corporation or the Building.
   All of these proceeds will be paid to you. If the proceeds are paid to me, I will hold them in trust for you and promptly after receipt deliver them to you. The proceeds will be used to reduce the amount I owe you under the Note and this Loan Security Agreement. If the Proceeds are not sufficient to pay off what I owe you in full, then I must still pay you the difference. If any of the proceeds remain after the amount I owe you has been paid in full, the remaining proceeds will be paid to me.

5. **PROMISE TO PAY**

   I promise to pay all the amounts as provided in the Note to you or anyone you name.

1

## 6. DELIVERY OF SHARES AND LEASE; END OF SECURITY INTEREST

I represent that I have delivered to you on or prior to the date of this Loan Security Agreement all the certificate(s) for the Shares and the duplicate original of the Lease, together with an executed stock power, an assignment of Lease and a recognition agreement, all acceptable to you. I will, without notice or demand, immediately deliver to you any replacement, substitute or additional certificate(s) for the Shares that may be allocated to the Apartment, and any amendments or extensions to, or replacement of or substitute for, the Lease.

After the term of Note and this Loan Security Agreement have ended, and I have repaid all amounts owing under the Note and this Loan Security Agreement, the Security Interest will terminate and you will return to me any certificate(s) for the Shares and the duplicate original Lease (including any such replacement, substitute or additional certificate(s) for the Shares and any amendments or extensions to, or replacement of or substitute for, the Lease) then in your possession. You will thereafter have no further obligation or responsibility to me.

## 7. REPAIRS AND ALTERATIONS; INSURANCE

I will keep the Apartment in good repair, and I will not make major or structural alterations to it without obtaining your prior written consent. If any of the fixtures are destroyed or removed, I will replace them immediately with others of the same or better quality and condition. I will use my best efforts to cause the Corporation to maintain a hazard insurance policy on the Building which meets at least your minimum standards. If the Building fails to maintain a hazard insurance policy at your minimum standards, I understand that you may accelerate the payment of the Loan.

## 8. RIGHT TO INSPECT PROPERTY

You have the right to enter and inspect the Apartment at any reasonable time upon reasonable notice.

## 9. PAYMENT OF FEES AND ASSESSMENTS AND COMPLIANCE WITH OTHER DUTIES

I will pay all maintenance fees and any special assessments or any other charges imposed by the Corporation or any governmental authority with respect to the Security when they are due. Even if the Corporation or any governmental authority gives me the choice to pay any maintenance fee, special assessment or other charge in installments rather than all at the same time, you can require me to pay the whole amount of the maintenance fee, special charge at the time the first installment is due. I will show you any receipts for payment of any maintenance fees, special assessments or the charges within ten (10) days after you ask to see them. I also agree to perform all my other obligations under the Lease, to take any actions necessary to prevent any default under the Lease and to comply with the bylaws and the rules and regulations of the Corporation. If I do not pay any of these fees, assessments or charges when they are due, do not perform my obligations under the Lease, do not take any actions necessary to prevent defaults under the Lease or do not comply with the bylaws or the rules and regulations of the Corporation, you may, but are not required to do so for me. If you do so, I will repay you the amount of those payments or the cost of those acts (including, but not limited to reasonable attorney's fees and costs) when you ask for repayment.

## 10. COMPLIANCE WITH LAWS AND REGULATIONS

I agree I will not use the Apartment for any unlawful purpose. If I receive a notice from any government authority or the Corporation that Apartment or my use or maintenance of it violates any regulation, order or law, then I agree that I must correct the violation and comply with the regulation, order or law as required but in no event later than forty-five (45) days after the date of such notice.

## 11. HAZARDOUS SUBSTANCES

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances in the Apartment. Borrower shall not do, nor allow anyone else to do, anything affecting the Apartment that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage in the Apartment of small quantities of Hazardous Substance that are generally recognized to be appropriate to normal residential uses and to maintenance of the Apartment.

Borrower represents that Borrower currently has no actual knowledge of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or privet party involving or affecting the Apartment and any Hazardous Substance or Environmental Law and Borrower agrees to

give Lender prompt written notice of any such information coming to Borrower's attention. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Apartment is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 11, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph11, "Environmental Law" means federal laws and laws of the jurisdiction where the Apartment is located that relate to health, safety or environmental protection.

## 12. CONSENT TO SALE OR LATER SECURITY INTEREST IN THE SECURITY

A.    I will not sell, transfer or permit the transfer of my ownership of the Security, or give or permit anyone else another security interest in it. If you become aware that I have taken any of these actions, you may, in accordance with this Security Agreement, require me to pay you immediately upon demand the full amount then due under the Note and this Loan Security Agreement.

If you exercise this right, you will give me notice of acceleration. The notice will provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay the full amount then due under the Note and this Loan Security Agreement and all other sums secured by this Loan Security Agreement. If I fail to pay these sums before the end of this period, you may exercise any remedies permitted by this Loan Security Agreement and/or under law without giving me any further notice or demand.

B.    I will not cause or permit any sublet of the Apartment without obtaining the following prior written approvals:

           i)    I will obtain the valid approval from the Corporation; and

           ii) .   I will obtain approval from you. Consent will not be unreasonably withheld.
(It is understood, however, that you may, in your discretion and for any reason or for no reason, withhold consent to any subletting of greater than 24 months.)

Also, I will not cause or permit any sublet of the Apartment if the same will result in a default under the Lease or the bylaws of the Corporation (or under any other document or instrument related to the Lease or the bylaws). I will not modify, extend or terminate any sublease and I will comply with all conditions in connection with such sublease which are imposed by you or the Corporation. My obligations under the Note and this Loan Security Agreement will not be affected by any subletting. All subleases of the Apartment will provide that the same may be cancelled by any new tenant under the Lease.

C.    At your request, I will assign to you all leases of the Apartment and all security deposits made in connection with leases of the Apartment. Upon the assignment, you will have the right to modify, extend or terminate the existing leases and to execute new leases. As used in this paragraph C, the word "leases" will mean "sublease" if this Loan Security Agreement is on a leasehold.

D.    I unconditionally assign and transfer to you all the rents and revenues of the Apartment. I authorize you or your agents to collect the rents and revenues and hereby direct each tenant, permitted subtenant and permitted occupant of the Apartment to pay the rents to you or your agents. However, prior to your notice to me of my breach of any covenant or agreement in the Note or in this Loan Security Agreement, I will collect and receive all rents and revenues of the Apartment as trustee for the benefit of you and me. This agreement of rents constitutes an absolute assignment and not as assignment for additional security only.
If you give notice of breach to me:

           i)    all rents received by me will be held by me as trustee for your benefit only, to be applied to the full amount then due under the Note and this Loan Security and all other sums secured by this Loan Security Agreement;

           ii)    you will be entitled to collect and receive all of the rents of the Apartment; and

           iii) .   each tenant, permitted subtenant and permitted occupant of the Apartment will pay all rents due and unpaid to you or your agent on your written demand.

I have not executed any prior assignment of the rents and have not and will not perform any act that would prevent you from exercising your rights under this paragraph D.
You will not be required to enter upon, take control of or maintain the Apartment before or after giving notice of breach to me. However, you or a judicially appointed receiver may do so at any time there is a breach. Any application of rents will not cure or waive any default or invalidate any other right or remedy of yours. This assignment of rents of the Apartment will terminate when the debt secures by this Loan Security Agreement is paid in full. I will not assign the rents and revenues of the Apartment to anyone else and I will not collect such rent for more than one (1) month in advance.

## 13.    CHANGES IN THE LAW.

If any new law is passed which requires you to pay a tax or special charge because you are the owner and holder of the Note and this Loan Security Agreement, then you may request that I pay you all of the debt that I owe you or, at your option, I will pay the tax or special charge.

At your option, I will pay such tax or special charge or I will pay you any and all of the amounts that I owe you under the Note and this Loan Security Agreement, all within thirty (30) days after you notify me about the passage of such law.

### 14. OWNERSHIP AND RIGHTS IN THE SECURITY

I represent to you that I am the sole owner of the Security and have the full right to give this Security Interest to you. I represent that no person or company has any interest in, lien or encumbrance on, or claim against, the Security, or any right to sell all or any part of the Security if I fail to pay any debt I owe to them, except the Corporation. I agree to defend my ownership of the Security and you rights under this Loan Security Agreement against any claims made against such ownership and/or rights by anyone. I will keep the Security free and clear from any other liens, claims or encumbrances. I also promise to you that the Security pertains to an owner-occupied residence.

### 15. DEFAULT

A. I will be in default of this Loan Security Agreement if:

i) I fail to pay you the money I owe you under the Note and this Loan Security Agreement on or before the date payment is due; or.

ii) if I fail to keep any of the other promises I have made to you in the Note or in this Loan Security Agreement or if I have made any statement or representation in this Loan Security Agreement or the Note or my loan application that is not correct; or

iii) if any payment under the Lease is not made when due or any other default occurs under the Lease, or I attempt to or cancel, surrender or assign the Lease prior to maturity of the Note, or the Lease is cancelled by the Corporation; or

iv) if I am in default under the Note or if I fail to pay or bond any judgment or tax deficiency against me; or

v) the Building is sold or destroyed or materially damaged; or

vi) the Corporation fails to maintain adequate insurance, to make mortgage payments or pay real estate taxes with respect to , the Building; or

vii) a bankruptcy, foreclosure or insolvency action or proceeding is brought by or against the Corporation, or the dissolution of the Corporation is authorized by its shareholders or directors; or

viii) a bankruptcy, foreclosure or insolvency action or proceeding is brought by or against me, or I die; or

ix) a writ or order of attachment or garnishment be made or issued against any of my property; or

x) a receiver is appointed for a portion of my property; or

xi) any other party without your consent establishes a security interest in the Security; or

xii) any other event occurs which allows you to hold me in default under this Loan Security Agreement or to declare my debt to you due and payable.

B. If I have defaulted under this Loan Security Agreement, you can decide that the entire amount I owe you under the Note and this Loan Security Agreement is immediately due and payable (unless the Note or this Loan Security Agreement provides otherwise). This is called your right to accelerate payment. You don't have to notify me or demand payment from me if you decide to accelerate payment, unless the Note or this Loan Security Agreement provides otherwise.

C. If a default occurs, you don't have to accelerate payment. If you do not accelerate payment at any time when one default occurs, you don't give up your right to accelerate if the same default continues or any future default occurs.

D. I promise to pay interest to you on any amounts you pay to perform my obligations under this Loan Security Agreement such as maintenance fees, assessments or other charges under the Lease. This interest will be due at the rate provided for in the Note from the Day that you incur the expense or make the payment to the date on which I reimburse you. The repayment of any of these amounts plus interest are secured by this Loan Security Agreement.

### 16. OBLIGATIONS WHEN PAYMENT IS ACCELERATED

If you accelerate payment, I must immediately (unless the Note or this Loan Security Agreement provides otherwise), pay you the entire amount I owe you under the Note and this Loan Security Agreement, plus any accrued interest on this amount and any other charges I owe you.

### 17. YOUR RIGHTS OF DEFAULT

A. If you accelerate payment and I do not pay you the entire amount of the debt I owe you, you will have the right to sell the Security at public or private sale, with or without advertisement of the time, place or terms of such sale, except that if it is a private sale, it will occur no less than five (5) days after written notice to me. You will determine the terms of any such sale. A sale conducted according to the usual practice of financial institutions selling similar security will be considered reasonably conducted. You may sell the Security for immediate cash payment or on credit. If the sale is on credit, you will

retain the Security until the sale price is paid in full. You will not be liable if the buyer fails to pay, and you may then re-sell the Security. You have the right to use the money you receive from any sale to pay collection and sale expenses (including but not limited to brokers' commissions and transfer taxes and fees) and your reasonable attorneys' fees (as provided in paragraph 18) as well as any payments due under the Lease and to repay what I owe on any superior liens and my debt to you. If the money you receive from the sale is not sufficient to pay off all expenses, amounts I owe the Corporation, the debt I owe on superior liens and my debt to you, I must still pay you the difference and you can get a personal judgment against me for this amount. If the sale brings in more money than is needed to pay your expenses, amounts I owe the Corporation, my debt on superior liens and my debt to you, the money left over will be paid to me.

      B.     You may elect to continue to hold the Shares and the Lease if you determine that a better price can be obtained at a later date, and absent gross negligence, you will not be liable to me for any loss in value in the Security. If you have the right to sell the Security, and have not begun to do so within ninety (90) days, I may demand that you proceed to sell the Security or may make the sale myself, at my own expense. However, you will not be required to sell the Security if the net proceeds would not be sufficient to repay in full my debt to you. Similarly, you may not prevent me from making the sale if the net proceeds would be sufficient to repay my debt in full.

      C.     If you elect to retain the Security, you will give me notice of your election. If I object to your election within thirty (30) days after your notice, you will offer the Security for sale and must sell if the net proceeds would be sufficient to pay all that I owe you under the Note, this Loan Security Agreement and otherwise.

      D.     You will have the right, in connection with a sale, to complete a stock power and assignment of lease in order to transfer the Shares and the Lease. I hereby give you the right, in connection with such sale, to request that the Corporation terminate the Lease and take all lawful steps necessary to obtain possession of the Apartment for and on your behalf. I will promptly vacate my Apartment and will cause the Apartment to be promptly vacated upon the sale of the Security or upon your earlier request. You may start legal proceedings to get possession of the Apartment if I or anyone else refuses to so vacate. The cost of these proceedings will be borne by me and may be added to the amount I owe you under the Note and will be secured by this Loan Security Agreement.

      E.     You or anyone designated by you may purchase the Security as stated above, free of my right to redeem the Security, which right of redemption I now waive.

      F.     You may seek the appointment of a receiver, without notice to me and without regard to the adequacy of the Security.

## 18.    ENFORCEMENT

     You can ask an attorney either to sell the Security as provided in paragraph 17, to collect the money I owe you under the Note and this Loan Security Agreement, or to enforce any of the promises I have not kept. If you hire an attorney to do any of these for you, you can add all reasonable legal fees, costs, allowances and disbursements to the amount I owe you under this Loan Security Agreement, together with interest on such amount at the rate provided in the Note. You agree that I am only responsible for legal fees, costs, allowances and disbursements paid to attorneys who are not your salaried employees and that such fees and other charges will not exceed 15% of the amount of my debt to you under the Note and this Loan Security Agreement at that time.

## 19.    RECEIVER OF RENTS

     If you commence a lawsuit to foreclose the Security Interest, you can ask the court to appoint someone to look after the Security and to collect rents from any tenants, subtenants or occupants in the Apartment. This person is called a "Receiver". This action can be taken without prior notice to me and without consideration of the value of the Security. If I or anyone else occupy all or any part of the Apartment, then the Receiver can collect a reasonable charge from me for the use and occupancy of it.

## 20.    USE OF THE MONEY LOANED TO ME

     I agree to comply with the trust fund provision of Section 13 of the New York Lien Law by using any money I receive from you for the purpose of paying the cost of any improvements made to the Apartment or otherwise with respect to the Security before I use any of the money for any other purpose.

## 21.    FILING AND RECORDING FEES AND TAXES

     You may file or record this Loan Security Agreement, financing statements, renewal or continuation financing statements and any other document which you decide may be advisable in order to protect your Security Interest. I agree to sign such financing statements, renewal or continuation financing statements and other documents. I will sign these financing statements, renewal or continuation financing statements and other documents on request or, at your option, you are authorized to sign them in my name as attorney-in-fact. I will also, at your request, sign any affidavits or other documents which may be necessary to maintain the priority of the lien of this Loan Security Agreement, or to release or to

enforce the lien, including but not limited to any amendments, corrections, deletions or additions to the Note or this Loan Security Agreement.

I agree to pay all filing, recording and other fees or taxes that may be incurred, including filing fees for financing statements and mortgage recording taxes, if any, which may be due with respect to this Loan Security Agreement and any advances and re-advances under this Loan Security Agreement and the Note (except for any mortgage recording taxes which New York law requires you to pay). If I do not pay any such filing, recording or other fees or taxes when they are due (i) you may do so for me and I will repay you when you ask for repayment or (ii), at your discretion, I will be held in default under this Loan Security Agreement.

## 22. DEFENSE OF YOUR RIGHTS

If you have to defend your rights under the Note or this Loan Security Agreement, then any money you have to pay (including reasonable attorney's fees and charges as provided in paragraph 18) will be added to the amount I owe you under the Note. I will pay this money promptly, at your request, together with interest on such amount at the rate provided in the Note.

## 23. NOTICES

You may give any written notices about the Note or this Loan Security Agreement to me by personal delivery to the Apartment or by certified or ordinary mail sent to the address of the Apartment. I will give written notice by personal delivery or certified ordinary mail to you at 4915 Independence Parkway, Tampa, Florida 33634-3123, or a different address if I am given written notice of that address. All consents, requests and other notices under this Loan Security Agreement or the Note will be in writing.

## 24. STATEMENTS ABOUT THE SECURED DEBT AND ADDITIONAL DUTIES

If you ask me, I will confirm in a signed statement of the amount I owe you under the Note and this Loan Security Agreement and whether or not I have any rights or claims to reduce or not pay this amount. I must give this statement within five (5) days if you ask me for the statement in person or within ten (10) days if you ask me for the statement by mail.

## 25. NON-LIABILITY OF CORPORATION

The Corporation, its directors, officers, agents or attorneys will not be liable to me if the Corporation transfers the Shares and Lease as required by this Loan Security Agreement, or brings any proceeding to dispossess or evict me or anyone else from the Apartment because of a default under this Loan Security Agreement. The Corporation may refuse to effect a transfer of the Shares and Lease made without your prior written consent.

## 26. CHANGES IN THIS LOAN SECURITY AGREEMENT

This Loan Security Agreement may be changed only in writing signed by you and me.

## 27. OTHER RIGHTS

If I do not perform any obligation of mine in this Loan Security Agreement, or if I otherwise breach an obligation of mine, you may, but are not required to, perform the obligation or remedy the breach. If you do so, I will repay you the amount it costs you to perform the obligation or remedy the breach (including, but not limited to, any reasonable attorney's fees and costs) when you ask for repayment. I will pay you interest on this amount at the rate provided for in the Note from the date you pay the amount to the date on which I reimburse you. The repayment of any such amount, including interest, is secured by this Loan Security Agreement.

In addition to the other agreements and rights which are in this Loan Security Agreement, you will have all of the rights provided under law, even if those rights are different from the rights which are in this Loan Security Agreement.

## 28. ENFORCEMENT OF YOUR RIGHTS

If you do not exercise or enforce any of the rights you may have under this Loan Security Agreement, the Note or under the law at any time, you will still have all of those rights and you may exercise and enforce them in future. Each of your rights under the Note and this Loan Security Agreement are separate. You can exercise and enforce one or more of those rights as well as any of your rights under the law one at time or all simultaneously.

6

## 29. MY RIGHTS BEFORE DEFAULT

Until there is a default under this Loan Security Agreement or the Note and you have demanded payment in full, I will have all rights, responsibilities and privileges of shareholder and lessee. Except as otherwise provided in this Loan Security Agreement, my obligations under the Lease will continue after any such default by me.

## 30. NEW YORK LAW

This Loan Security Agreement will be governed by the laws of the State of New York. If any provision of this Loan Security Agreement is found invalid, the remainder of this Loan Security Agreement will still be binding and effective.

## 31. PERSONS OBLIGATED UNDER THIS SECURITY AGREEMENT

Until I have satisfied all my obligations under the Note and this Loan Security Agreement, the agreements and promises contained in this Loan Security Agreement will be binding upon me, my heirs and all people acting for me, and also on all future owners and tenants of the Apartment (as well as any subtenant of the Apartment). This paragraph will not be read as giving me the right to sublet the Apartment, assign the Lease or transfer the Shares. This Loan Security Agreement is for your benefit and for the benefit of anyone to whom you transfer, sell or assign the Note and this Loan Security Agreement and your rights in the Security.

If there is more than one person signing this Loan Security Agreement, each shall be separately and jointly responsible for keeping the promises and agreements made in this Loan Security Agreement.

_____
Witness

_____
Witness

_____
Witness

Borrower    *Mikhail Levitsky*    **MIKHAIL LEVITSKY**

Borrower    *N. Levi*    **NATALIYA LEVITSKY**

Borrower    _____

STATE OF NEW YORK    )
                     :SS.:
COUNTY OF KINGS      )

On **MARCH 8, 2006** before me, the undersigned, a notary Public in and for said State, personally appeared **MIKHAIL LEVITSKY and NATALIYA LEVITSKY** known to me or proved to me on the basis of satisfactory evidence to be the individual(s) who is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), as that by his/her/their signature(s) on the instrument, the individual(s) acted, executed the instrument.

My Commission expires:

_____
Notary Public

DAVID FAINKICH, NOTARY PUBLIC
STATE OF NEW YORK
NO. 02FA6044098
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES: 6/26/0~

## PROPRIETARY LEASE

PROPRIETARY LEASE, made as of March 8        2006, 15, by and
between 611 BANNER OWNERS CORP., a New York corporation, having
an office at 611 Banner Avenue, Brooklyn, New York, hereinafter
called the Lessor, and Mikhail Levitsky & Nataliya Levitsky, hereinafter
_____, hereinafter called the Lessee.

WHEREAS, the Lessor is the owner of the Residential Unit in
the 611 Banner Avenue Condominium (the "Condominium") and the
appurtenant interest of such Unit in the Common Elements of the
Condominium; the Condominium having been created pursuant to
Article 9-B of the New York Real Property Law, by means of a
certain Condominium Declaration (with By-Laws) filed with the
City Register of the County of Kings, for the land and building
located at 611 Banner Avenue, Brooklyn, New York; it being
understood that, unless the context otherwise specifically
requires, the "building," as sometimes hereinafter referred to,
is intended to signify such Residential Unit with appurtenant
interest in the Condominium Common Elements; and

WHEREAS, the Lessee is the owner of 875 shares of the
Lessor, to which this lease is appurtenant and which have been
allocated to Apartment 6U in the Residential Unit.

Demised Premises. Term. NOW, THEREFORE, in consideration
of the premises, the Lessor hereby leases to the Lessee, and the
Lessee hires from the Lessor, subject to the terms and conditions
hereof, Apartment 6U in the Residential Unit (hereinafter
referred to as the "apartment") for a term from March 8, 2006,
6U, until December 31, 2087 (unless sooner terminated as
hereinafter provided). As used herein "the apartment" means the
rooms in the Residential Unit as partitioned on the date of the
execution of this lease designated by the above-stated apartment
number, together with their appurtenances and fixtures and any
closets, terraces, patios, or portion thereof outside of said
partitioned rooms, which are allocated exclusively to the
occupant of the apartment.

1. (a) Rent (Maintenance) How Fixed. The rent (sometimes
called maintenance) payable by the Lessee for each year, or
portion of a year, during the term shall equal that proportion of
the Lessors cash requirements for such year, or portion of a
year, which the number of shares of Lessor allocated to the
apartment bears to the total number of shares of the Lessor
issued and outstanding on the date of the determination of such
cash requirements. Such maintenance shall be payable in equal
monthly installments in advance on the first day of each month,
unless the Board of Directors of the Lessor (hereinafter called
Directors) at the time of its determination of the cash

(f)  Copies of the By-Laws and proprietary lease of the Lessor, as amended.

(g)  Copy of notice of uncured violations of record in the apartment that are the responsibility of the Lessee to cure, if any.

53.  <u>Limitation on Voting Control of Lessor</u>.  The holders of unsold Shares will be entitled to vote all shares held by them. However, if Unsold Shares held by Sponsor and/or other holders of Unsold Shares are sufficient to elect a controlling majority on the Board of Directors of the Lessor, the Sponsor and/or the other holders of the Unsold Shares will not exercise such voting control of the Board of Directors for more than five (5) years following the Closing Date or whenever the Unsold Shares constitute less than fifty (50%) percent of the Lessor's issued and outstanding shares, whichever is sooner.  The Sponsor and/or other holders of Unsold Shares must relinquish control attained at the first election after either of the above two conditions has occurred.

IN WITNESS WHEREOF, the parties have executed this lease.

611 BANNER OWNERS CORP., Lessor

By: _____
    Arthur Wiener, President
                         VICE

_____ (L.S.)
Mikhail Levitzky          , Lessee

_____ (L.S.)
Natalya Levitzky          , Lessee

## ASSIGNMENT OF LEASE

I/We received this day from **JPMORGAN CHASE BANK, N.A.** (the "Lender"), a loan in the amount of **$136,000.00** in connection with cooperative apartment # **6H** in the building located at: **611 BANNER AVENUE, BROOKLYN, NY**

To secure the repayment of the loan, I/We hereby assign to the Lender and any subsequent holder of the Note evidencing the loan (the "Note"), all of my/our rights under a proprietary lease (the "Lease") made between me/us and **611 BANNER OWNERS CORP.** and dated **MARCH 8, 2006** for the above apartment. This Assignment shall include all amendments to, and extensions and renewals of, the Lease. This Assignment shall remain in effect for as long as part of the loan remains unpaid, and is subject to all of the terms and conditions of the Lease.

Provided that, upon performance of all my obligations under the Note and the Loan Security Agreement entered into between me and the Lender on the date of this Assignment, this Assignment shall be void and of no further force or effect.

Dated: **MARCH 8, 2006**

_Mikhail Levitsky_
**MIKHAIL LEVITSKY**      -Borrower

_M. Levit_
**NATALIYA LEVITSKY**      -Borrower

STATE OF NEW YORK    )
                    )SS.:
COUNTY OF KINGS     )

On the **8TH** day of **MARCH, 2006**, before me, the undersigned, a Notary Public in and for said State, personally appeared **MIKHAIL LEVITSKY and NATALIYA LEVITSKY** known personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) who is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), as that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

DAVID FAINKICH, NOTARY PUBLIC
STATE OF NEW YORK
NO. 02I 4648098
QUALIFIED IN KINGS COUNTY
COMMISSION EXPIRES 6/26/07

My Commission Expires:



NUMBER
516

SHARES
825

611 BANNER OWNERS CORP.

See Reverse for Certain Definitions

Incorporated under the Laws of the State of New York

TOTAL AUTHORIZED ISSUE
120,000 SHARES, PAR VALUE $ 1.00, COMMON STOCK

THIS is to Certify that _Mikhail Levitsky and Natalya Levitsky_ Tenent
_Eight Hundred Twenty-Five_ ____ is the owner of
_____ fully paid and non-assessable shares of
the above Corporation, transferable only on the books of the Corporation by the holder hereof,
in person, or by duly authorized Attorney, upon surrender of this Certificate, properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated: March 8, 2005

_____ Asst. Secretary

_____ Alice, President

611

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** I/We hereby sell, assign and transfer to _____

Social Security Number _____ /Taxpayer ID Number _____,

**875** Shares of the Capital Stock of **611 BANNER OWNERS CORP.** represented by

Certificate Number(s) _____ _____ inclusive, standing in my/our

name(s) on the books of said Company.

I/We hereby irrevocably constitute and appoint _____

_____

attorney, to transfer the said stock on the books of said Company with full power of

substitution in the premises.

Dated: **MARCH 8, 2006**

_Mikhail Levitsky_

**MIKHAIL LEVITSKY**          -Borrower

_A. Levitky_

**NATALIYA LEVITSKY**          -Borrower

In presence of:

_____


# COOPERATIVE APARTMENT
## FIXED/ADJUSTABLE RATE NOTE
### (One – Year Treasury Index – Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MARCH 8, 2006                                       BROOKLYN  NEW YORK
[Date]                                              [City]        [State]

611 BANNER AVENUE, UNIT 6H
BROOKLYN, NY 11235
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $136,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is JPMorgan Chase Bank, N.A. organized and existing under the laws of the U.S.A. I will make all payments under this note in the form of cash, check, or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.250 %.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments .

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on MAY 1, 2006. I will make these payments every month until I have paid the entire principal and interest and any other charges described below that I may owe under this Note. Each payment will be applied as of its scheduled due date and be applied to interest before principal. If, on APRIL 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at Chase, P.O. 79046, Phoenix, AZ 85062-9046 or at a different place if requires by the Note Holder.

(B) Amount of Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 708.33. This amount may change.

(C) Monthly Payment Changes

Changed in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)     Changes Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day April 2013, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date".

(B)     The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)     Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one-Quarter percentage points (2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my interest rate until the next change date.

1

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater that 11.250% or less than 2.250%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater that 11.250%.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay he amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date to any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial prepayment, there will be no charges in the due date or in the amount of my monthly payment unless Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduced principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately in full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses included, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more that one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, either a Security Agreement or Loan Security Agreement (referred to as the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### – CONSENT TO SALE OR LATER SECURITY INTEREST IN THE SECURITY

I will not sell or transfer my ownership of the Security, or give any later security interest in it, or sublet the Apartment, without obtaining your prior written consent. If you become aware that I have taken any of these actions without your consent, you may require me to pay you immediately upon demand the full amount then due under the Note and this Loan Security Agreement. However, you will not exercise this option if federal or other applicable law prohibits you from exercising it at the time.

If you require immediate payment in full under this Paragraph 12, you will give me a notice which states this requirement. The notice will give me at least thirty (30) days to make the requires payment. The thirty (30) day period will begin on the date the notice is mailed or delivered. If I do not make the requires payment during that period, you may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Mikhail Levitsky*

Borrower –
Soc. Sec.#                                         MIKHAIL LEVITSKY

Borrower-
Soc. Sec.#

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N A

By: _____
Jeff Wise, Assistant Vice President

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006013000117001001E327A

Document ID: 2006013000117001     Document Date: 01-30-2006     Preparation Date: 01-30-2006
Document Type: INITIAL COOP UCC1                                COOPERATIVE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| MUTUAL ABSTRACT CORP. | MUTUAL ABSTRACT CORP. |
| 132 NASSAU STREET, 812 | 132 NASSAU STREET, 812 |
| NEW YORK, NY 10038 | NEW YORK, NY 10038 |
| 212-964-4686 | 212-964-4686 |
| INFO@MUTUALABSTRACT.COM | INFO@MUTUALABSTRACT.COM |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 7242 | 1002 | Entire Lot | 6H | 611 BANNER AVENUE |

Property Type: SINGLE RESIDENTIAL COOP UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ____ Page_____ or File Number_____

### PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| MIKHAIL LEVITSKY | JPMORGAN CHASE BANK NA, C/O CHASE HOME |
| 611 BANNER AVENUE, APT. 6H | FINANCE LLC |
| BROOKLYN, NY 11235 | 780 KANSAS LANE, SUITE B |
| | MONROE, LA 71203 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 40.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing  Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          01-31-2006 12:07
City Register File No.(CRFN):
2006000057699

*Qnnette M Hill*

*City Register Official Signature*



2006013000117001001C30FA

Document ID: 2006013000117001
Document Type: INITIAL COOP UCC1

Document Date: 01-30-2006

Preparation Date: 01-30-2006

**PARTIES**
**DEBTOR:**
NATALIYA LEVITSKY
611 BANNER AVENUE, APT. 6H
BROOKLYN, NY 11235

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 10-01958-JAF
CHAPTER 13 CASE

IN RE:

MIKHAIL LEVISKY
NATALIYA LEVITSKY

Debtors.

_____/

STATE OF OHIO
COUNTY OF FRANKLIN

## AFFIDAVIT IN SUPPORT OF MOTION
## FOR RELIEF FROM STAY

BEFORE ME, the undersigned authority, on this day personally appeared Andrew Scott on behalf of **JP MORGAN CHASE BANK, N.A.,** who is over the age of eighteen years, is fully qualified and authorized to give this Affidavit and has personal knowledge of the matters addressed herein. After being by me duly sworn on her/his oath deposed and stated:

1. My name is Andrew Scott. I am a Mortgage Officer for, **JP MORGAN CHASE BANK, N.A.,** with regards to this loan with **JP MORGAN CHASE BANK, N.A.** In the course of my employment, I have become familiar with the manner and method in which **JP MORGAN CHASE BANK, N.A.,** maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

2. **JP MORGAN CHASE BANK, N.A.** had to retain Counsel to represent it before this Court and is incurring legal expenses and attorneys' fees of at least $800.00 for handling

10-18125

the Motion for Relief from Stay for which it is entitled to reimbursement under the terms of the Note.

3. I have reviewed the books and records which reveal that **JP MORGAN CHASE BANK, N.A.** is the owner and holder of a real estate Note ("Note") which is secured by a Deed of Trust of even date executed by **MIKHAIL LEVITSKY AND NATALIYA LEVITSKY** on or about March 8, 2006.

4. As of the date Movant's Motion was filed, the principal balance owed by Debtor(s) to **JP MORGAN CHASE BANK, N.A.** was $134,996.30, plus advances made, attorneys' fee and costs, and interest accruing thereon in accordance with the loan documents. .

5. The borrower(s), **MIKHAIL LEVITSKY AND NATALIYA LEVITSKY**, have defaulted in payments due to Secured Creditor by failing to make the contractual payment due on February 01, 2009 and all subsequent payments.

6. The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify completely thereto. I declare under penalty of perjury that to the best of my knowledge, the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Affiant

Sworn to and subscribed before me this

___1st_____ day of ___April_____,2010.

NOTARY PUBLIC, State of OHIO

Commissioned Name of Notary Public

Personally known __X__ or produced identification

Type of Identification Produced

_____
Notary



MICHEAL J. WILLIAMSON
Notary Public, State of Ohio
My Commission Expires 08-11-10

10-18125